**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**

**CIVIL ACTION NO. 21-95-DLB**

**JAMES HAMILTON PROPERTIES, LLC**                               **PLAINTIFF**

**v.**                          <u>**MEMORANDUM ORDER**</u>

**GREAT MIDWEST INSURANCE CO.**                                    **DEFENDANT**

*** *** *** ***

This matter is before the Court upon Defendant Great Midwest Insurance Company's Motion for Appointment of an Umpire. (Doc. # 12). The Motion has been fully briefed (Docs. # 16 and 18) and is ripe for review. For the reasons stated herein, Defendants' Motion for Appointment of an Umpire is **GRANTED**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

While the facts of this case were largely explained in the Court's recent Memorandum Order denying Plaintiff's Motion to Remand, certain facts relevant to Defendants' Motion for Appointment of an Umpire will be reiterated. Plaintiff James Hamilton Properties, LLC ("James Hamilton") secured an insurance policy from Defendants Great Midwest Insurance Company ("Great Midwest") and Complete Insurance, LLC ("Complete Insurance") that allegedly covered property damage, including fire damage, on Plaintiff's coal crushing and coal screening plants.[1] (Doc. # 1-1 ¶ 10).

---

[1] In the Court's Memorandum Order on Plaintiff's Motion to Remand, the Court dismissed without prejudice Plaintiff's breach of contract claim against Complete Insurance due to lack of ripeness, so Complete Insurance is no longer involved in the instant suit. (Doc. # 15).

1

On October 30, 2019, a fire and/or act of vandalism occurred at Plaintiff's coal crushing and coal screening plant located in Pikeville, Kentucky. (*Id.* ¶ 9). Plaintiff alleges that the policy it procured for comprehensive property damage covers up to $275,000 "against various losses including fire, vandalism and other losses to the property/equipment described above." (*Id.* ¶ 11). Defendant Great Midwest allegedly breached this policy by failing to pay for all of the property damage incurred at the coal crushing and screening plant. (*Id.* ¶ 10). According to Plaintiff, Great Midwest offered $14,250 to cover the damages, instead of Plaintiff's appraisal value of $268,000. (*Id.* ¶¶ 20-21). Great Midwest's appraiser, according to Plaintiff, has only evaluated two components from the coal crushing and screening plant, instead of the entirety of the system, resulting in Great Midwest's offer of $14,250 to cover the damages. (*Id.* ¶¶ 22-23). Great Midwest disputes this characterization—"at no point has [Great Midwest] stated that one or more pieces of equipment or their components are not covered by the policy"—as such, the "only dispute . . . is the value of [] Plaintiff's claim." (Doc. # 10 at 1).[2]

## II. ANALYSIS

### 1. Appraisal Condition

Due to the inability of Plaintiff and Defendant's appraisers to come to an agreement on the value of Plaintiff's claim, Defendant has moved for Appointment of an Umpire in accordance with the Policy documents. (*See generally* Doc. # 12). The Policy lays out loss conditions which include a specific appraisal process:

---

[2] As Great Midwest has asserted to this Court that it only disputes the value of Plaintiff's claim, the court-appointed umpire shall take into account the entirety of the property damage incurred at the coal crushing and screening plant.

**B. Appraisal**

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> 1. Pay its chosen appraiser; and
>
> 2. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

(Doc. # 12-2 at 29).

Plaintiff opposes Defendant's Motion to Appoint an Umpire for one main reason—Ky. Rev. Stat. § 417.050(2), which renders any arbitration agreements in insurance contracts unenforceable. *See Legacy Consulting Grp., LLC v. Gutzman*, 636 S.W.3d 447, 449 (Ky. 2021). Plaintiff correctly explains the utility of this statute. However, appraisal conditions relating to the appointment of an umpire have been enforced in this circuit. *See Cincinnati Specialty Underwriters Ins. Co. v. C.F.L.P. 1, LLC*, 741 Fed. App'x 318, 319 (6th Cir. 2018) (affirming the district's court's appointment of an umpire); *Nationwide Gen. Ins. Co. v. 1616 Gardiner Lane, Inc.*, No. 3:20-CV-651, 2021 WL 2459473, at *2 (W.D. Ky. June 16, 2021) (considering the scope of an umpire's decision where policy terms contemplate the appointment of an umpire). The Court sees no reason to deviate from other courts, as the language of the Policy clearly provides the Court the power to appoint an umpire.

Importantly, these cases only discuss the appointment of an umpire, and not the effect of an umpire's ruling, or whether appointment of an umpire is considered arbitration

3

under Ky. Rev. Stat. § 417.050(2). *See Cincinnati Specialty*, 741 Fed. App'x at 319 n.1 ("neither party challenged the district court's authority to make the appointment"). Federal law contemplates that an umpire's decision may well be equivalent to that of an arbitrator, but in other cases it may not. *See Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 693 (6th Cir. 2012) ("Under federal law, whether the appraisal provision in this case is 'arbitration' under the FAA depends on how closely it resembles classic arbitration. 'Central to any conception of classic arbitration is that the disputants empowered a third party to render a decision settling their dispute.'") (quoting *Salt Lake Tribune Publ. Co. v. Mgmt. Planning, Inc.*, 390 F.3d 684, 689 (10th Cir. 2004)) (internal citations omitted). However, no Kentucky court has yet decided this issue. This Court therefore expressly reserves ruling on whether the umpire's decision will be binding until after the appraisal condition of the policy is met and a filing to that effect is filed in the record.

### 2. Umpires Suggested by the Parties

Each of the parties suggested a number of umpires and included their relevant experience to help assist with the Court's decision. Plaintiff suggested four different umpires: Ronnie Summers, Dennis Phillips, Edward Grych, and JL Scott. (Doc. # 16 at 6). Defendant suggested three different umpires: David Bleeks, Sam Hufstedler, and Christopher Burton. (Doc. # 12-1 at 3-4). Based on the parties' filings, two of the suggested candidates, one from Plaintiff and one from Defendant have the most directly relevant experience with coal crushing and screening plants: Dennis Phillips and David Bleeks.

Defendant takes issue with Plaintiff's suggestion of Dennis Phillips as a potential umpire. (Doc. # 18 at 5-6). Specifically, Defendant argues that Phillips previously worked

4

at the same company as Plaintiff's appraiser William Arkell, which Defendant sees as "an obvious attempt to select an umpire who is not neutral, but who will favor their valuation." (*Id.*). The Court is not persuaded by Defendant's argument. In the context of appraisal provisions, an appraiser "is not disinterested where the appraiser's report is directly influenced by one of the parties," but "an appraiser's prior work for a party does not necessarily make him interested or partial." *Veranda Gardens, LLC v. Secura Ins.*, No. 3:18-cv-611, 2019 WL 2438788, at *3 (W.D. Ky. June 11, 2019). Even so, an umpire's impartiality should be held to a higher standard than that of an appraiser. In *Cincinnati Specialty Underwriters Insurance Co. v. C.F.L.P. 1, LLC*, the district court contemplated a similar issue related to an umpire's impartiality. No. 3:14-CV-40, 2017 WL 5339906, at *1-2 (W.D. Ky. Nov. 13, 2017), *affirmed by Cincinnati Specialty*, 741 Fed. App'x 318. There, Cincinnati Specialty's proposed umpire, Jeff Turley, allegedly had a "pecuniary relationship" with it. *Id.* at *1. Even so, the Court explained that although Turley's past company may handle claims for Cincinnati Specialty, Cincinnati Specialty "is not his employer, does not limit the parties for whom he may perform appraisals, and plays no other role in selecting or approving his appraisal assignments . . . nor does he have any interest, financial or otherwise, in the outcome of the dispute . . . ." *Id.* at *2.

In light of the conflict alleged in *Cincinnati Specialty*, this Court is not inclined to disqualify Phillips as an umpire when Defendant has not alleged, nor does the record reflect, any financial incentive or interest which calls into question his impartiality. A potential umpire's past work with an appraiser, with no other connection, does not make him partial.

Defendant only lists one potential umpire, David Bleeks, with direct experience with crushing and screening plants, although the others are qualified to appraise mining equipment. (Doc. # 12-1 at 3-4). Plaintiff lists three umpire candidates with such experience, but a review of Dennis Phillips's CV makes clear that he is the most qualified of the three. (Doc. # 16 at 6).

Bleeks has worked at Commonwealth Equipment, a crushing and screening company, which services and supplies the equipment subject to Plaintiff's claim, for sixteen years, and has twenty-five years of combined experience in crushing and screening plants. (Docs. # 12-1 at 3-4 and 12-3). Phillips has a Ph.D. in Mining Engineering, Coal & Mineral Processing, is currently President of Raw Resources, a company that designs and builds coal processing plants and systems, and has over forty years of experience in coal processing plants. (Docs. # 16 at 6 and 17 at 3-4). Due to Phillips's advanced education and longer tenure in the coal processing industry, the Court finds that Phillips is the most qualified candidate for umpire.

### III.   CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)   Defendant's Motion to Appoint an Umpire (Doc. # 12) is **GRANTED**;

(2)   Umpire Dennis Phillips is appointed in accordance with the Appraisal provision in the Policy;

(3)   A decision shall be made by the umpire regarding the value of Plaintiff's claim by July 31, 2022;

(4)   Within seven (7) days of any such decision, the parties shall file a Joint Status Report indicating whether they will agree to the umpire's decision, thereby settling

Plaintiff's claim, or that one or both of the parties intend to challenge the umpire's decision; and

    (5)    If any party intends to challenge the umpire's decision, that party shall file a motion to that effect within twenty-one (21) days after the filing of the Status Report.

This 8th day of June, 2022.



Signed By:
*David L. Bunning*   DB
United States District Judge

M:\DATA\ORDERS\PikeCivil\2021\21-95 Memorandum Order on Umpire.docx